CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 27 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES JESSUP, | ) | CASE NO. 7:18CV00505 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

Petitioner James Jessup, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement under a 2013 judgment by a state court. The matter is presently before the court on the respondent's motion to dismiss and Jessup's response thereto. For the reasons set forth below, the court concludes that the respondent's motion to dismiss must be granted.

I. BACKGROUND.

A grand jury of the Appomattox County Circuit Court returned indictments in June of 2013, charging Jessup with one count of indecent liberties and nine counts of sexual abuse of a child at least thirteen but not yet fifteen years of age: three counts of carnal knowledge without the use of force, three counts of forcible sodomy, and three counts of object sexual penetration.[1] Jessup pleaded not guilty and proceeded to a bench trial on August 8, 2013.

In denying Jessup's direct appeal, the Court of Appeals of Virginia found the following facts from the evidence presented at trial, stated in the light most favorable to the Commonwealth:

> [I]n July 2012, fourteen-year-old C.H. spoke to [Jessup] when he visited with her parents at their house. C.H.'s birthday was on July 25, and [Jessup] was at her house around the time of her birthday. C.H. testified [Jessup] sent her text messages and called her afterwards. C.H. testified she next saw [Jessup] at H.J.'s trailer just prior to the start of school in mid-August 2012. H.J. was [Jessup]'s daughter. C.H.

---

[1] In the same time period, the grand jury charged Jessup with other offenses involving other victims that are not the subject of this habeas corpus action.

testified [Jessup] arrived at H.J.'s trailer, [he] took her to Wal-Mart, [he] bought her a pair of pants, and they returned to H.J.'s trailer. C.H. testified she went to the bathroom to try on the pants, she exited the bathroom, [Jessup] took her to H.J.'s bedroom, and [Jessup] put his hand down her pants. C.H. testified [Jessup] rubbed her vagina and put two fingers inside her vagina. C.H. testified H.J. drove her home and she did not tell her parents what had happened.

C.H. testified after the August incident, she saw [Jessup] when he came to her house to visit with her parents. C.H. testified [Jessup] called her or sent her a text message every day after the August incident and [Jessup] stated that he wanted to marry her after she turned eighteen. C.H. testified on a Friday in late October 2012, H.J. picked her up and took her to H.J.'s trailer.[2] [Jessup] was at H.J.'s trailer. C.H., H.J., [Jessup], and others went to a Pizza Hut and Wal-Mart, where one of the adults purchased alcohol. While in the car, C.H. consumed alcohol. Later, [Jessup] drove C.H., H.J., and H.J.'s boyfriend to H.J.'s trailer. C.H. testified she went to the bedroom to lie down because she was not feeling well from the alcohol. C.H. testified [Jessup] removed her pants, [he] removed her underwear, and [he] inserted his fingers into her vagina. C.H. testified [Jessup] also performed oral sex on her. C.H. testified she spent the night at H.J.'s trailer, and on Saturday morning, [Jessup] again performed oral sex on her. C.H. testified [Jessup] drove her home on Saturday morning, she packed clothes, and they later returned to H.J.'s trailer. C.H. testified [Jessup] slept in the same bed with her on Saturday night and [he] used his "fingers and tongue" again. C.H. testified H.J. drove her home on Sunday morning. C.H. did not tell her parents what had happened.

After the October incident, [Jessup] and C.H. frequently sent text messages to each other and talked on the phone. C.H. testified she next saw [Jessup] in late December 2012. C.H. testified H.J. picked her up and they went to H.J.'s trailer, but H.J. left a short time later. C.H. testified [Jessup] was at the trailer and he performed oral sex on her while she performed oral sex on him. C.H. testified [Jessup] took her home. During cross-examination, C.H. admitted she telephoned a bomb threat to her school in March 2013 [after arrest warrants for the sexual offenses had been issued against Jessup in January 2013]. C.H. explained she did not want to go to school because classmates knew about the charges and they were calling her names. C.H. admitted she told adults about the incidents after C.H. learned that H.J. accused [Jessup] of rape.[3]

H J. testified [Jessup] was at her trailer on October 26, 2012, and after going out for pizza, consuming alcohol, and visiting friends, C.H. and [Jessup] spent the night in a bedroom of the trailer. H.J. testified [Jessup] and C.H. spent the night of October 27, 2012 together at her trailer. H.J. testified she never left [Jessup] and C.H. alone in her trailer.

---

[2] On cross-examination, C.H. agreed that it was Friday, October 26, 2012.

[3] The charges against [Jessup] involving H.J. were before a court in Nelson County.

2

Mem. Supp. Mot. Dism. Ex. B, at 3-5, ECF No. 11-2.

Several times during cross-examination, defense counsel pointed out inconsistencies between C.H.'s trial testimony and her testimony at the preliminary hearing. Tr. 64, 73-74, 75, 82, 84.[4] C.H. testified that her father and Jessup rode motorcycles and would go to the drag strip to race, and sometimes she went with them. Tr. at 79. C.H. admitted during cross-examination that she had telephoned a bomb threat to her school in March of 2013, and then she explained that she did not want to go to school after classmates learned of the charges against Jessup and began calling her names. Tr. at 91-92, 95-96. C.H. also admitted that she told adults about the incidents with Jessup only after learning that H.J. had accused Jessup of sexual offenses charged in Nelson County. Tr. at 81-82.

At the conclusion of the Commonwealth's case, the trial court struck three charges of forcible sodomy and three charges of object sexual penetration. Tr. at 135-37. The defense put on two witnesses.

> Grace Scott, [Jessup]'s sister, testified she lived at H.J.'s trailer from the end of July through October 3, 2012, she never left the trailer, she never saw C.H. at the trailer, and she saw [Jessup] at the trailer for a brief period on only two occasions. Scott testified she only left the trailer because she was arrested for a probation violation.
>
> Erin Thompson, [Jessup]'s wife, testified she went to the drag strip on the afternoon of October 27, 2012 with [Jessup] and others, including C.H. and C.H.'s parents. Thompson testified she remembered the date because she had a track timesheet for the date. Thompson testified the track timesheet showed [Jessup] raced between 4:43 p.m. and 5:54 p.m. Thompson testified she left the drag strip with [Jessup], they went home, and he stayed home with her.

Mem. Supp. Mot. Dism. Ex. B, at 5, ECF No. 11-2.

---

[4] In this memorandum opinion, citations to the transcripts in the circuit court record for Commonwealth v. Jessup, CR13-36 to CR13-50 are abbreviated as follows: "Tr." cites to the transcript of the bench trial on August 8, 2013; "Hr'g Tr." cites to the transcript of the hearing on September 5, 2013; and "Sent. Tr." cites to the transcript of the sentencing hearing on September 16, 2013. "Pr. Hr'g Tr." cites to the preliminary hearing transcript, a copy of which is included as an exhibit to the Motion to Dismiss in the state habeas record of the Supreme Court of Virginia.

At the conclusion of the evidence, Judge Kimberly White stated that the case rested on the credibility of C.H. The judge said she had listened "exceedingly carefully" to C.H.'s testimony and had taken "copious notes" when C.H. and H.J. were testifying. Tr. at 167. Judge White stated that C.H.'s testimony was clearer than H.J.'s testimony and found that C.H.'s testimony regarding the sexual acts was credible. Tr. at 167, 170. Judge White found Jessup guilty of three counts of carnal knowledge and one count of indecent liberties. Tr. at 170.

Appearing for sentencing on September 5, 2018, Jessup's counsel made an oral motion for a new trial. Hr'g Tr. at 3. Counsel stated that H.J. had told him she wanted to change her trial testimony about the offenses against C.H. Id. Counsel said that H.J., who was present, would "testify, in essence, that none of this happened." Id. Judge White directed defense counsel to file a written motion, continued the sentencing, and closed court without permitting H.J. to present her testimony. Id. at 4-5.

When the parties reappeared for sentencing on September 16, 2013, H.J. was not present. Sent. Tr. at 6. Jessup's counsel proffered that H.J. feared changing her testimony would result in prosecution for perjury and jeopardize her new public housing arrangement. Id. at 20. The prosecutor reported H.J.'s statement after the hearing on September 5, 2013, that Jessup's family had offered her $2,000 to change her story, and she needed the money. Id. at 22-23. In support of the motion for new trial, Jessup's counsel unsuccessfully offered an unsigned affidavit he had prepared for H.J. to sign on September 5, 2013, which she had thereafter refused to sign, saying that it was not correct. Id. at 21-22. Counsel also offered into evidence a participant registration form from the drag race strip. Id. at 24-25.

Judge White recognized that the registration form was corroborative of the trial testimony from Jessup's wife. Id. at 29. The judge also noted that even at trial, she had recognized

4

discrepancies between H.J.'s and C.H.'s testimony and that she continued to find C.H. to be the more credible witness. Id. at 30. The judge then denied the motion for a new trial and sentenced Jessup to forty years in prison on the four felony offenses. Id. at 32, 45-46.

Jessup appealed. The Court of Appeals of Virginia denied the appeal by order dated October 6, 2014. Commonwealth v. Jessup, Record No. 2258-13-2. Some years later, Jessup was granted leave to seek a belated subsequent appeal to the Supreme Court of Virginia, which refused his appeal in a summary order dated February 15, 2017. Commonwealth v. Jessup, Record No. 160836.

Jessup then filed a timely, pro se petition for a writ of habeas corpus in the Supreme Court of Virginia, executed on February 8, 2018. Jessup v. Clarke, Record No. 180218. Weeks later, he filed additional unverified sheets containing factual and legal argument, dated March 1, 2018, attached to a motion for expansion of record.[5] By order dated April 17, 2018, the Court denied this motion that was filed outside the statute of limitations. See Va. Code Ann. § 8.01-654(A)(2) (requiring habeas corpus petition challenging criminal judgment to be filed within one year from completion of direct appeal).

Jessup's form state habeas petition alleged the following cursory claims:

(1) Counsel rendered ineffective assistance when he adopted a defense not the most compatible with the facts;

(2) Counsel failed to make a reasonable effort to procure testimony of an alibi witness;

(3) Counsel failed to secure documentary evidence through a subpoena duces tecum.; and

(4) Counsel failed to secure a bill of particulars, thus depriving Jessup of a meaningful opportunity to present a complete defense.

---

[5] Jessup's motion asserted his intent to add certain affidavits and exhibits to the record, but no such documents were attached to the motion.

5

By order dated May 2, 2018, the Court directed the respondent to file responsive pleadings by June 11, 2018, and permitted Jessup to file a response to the respondent's pleading on or before July 11, 2018. Jessup executed a traverse to the motion to dismiss on July 25, 2018, outside the allotted time. The traverse included the same factual and legal arguments that he had earlier submitted with the motion to expand the record.

By order dated October 2, 2018, the Supreme Court of Virginia granted the respondent's motion to dismiss Jessup's habeas petition. The Court stated that it had considered "the petition for a writ of habeas corpus filed February 12, 2018, the rule to show cause, and the respondent's motion to dismiss." Mem. Supp. Mot. Dism. Ex. A, at 1, ECF No. 10. The Court expressly noted that it had denied his motion to expand the record and had not considered Jessup's late-filed attachments.

In Jessup's § 2254 petition before this court, he alleges that his trial counsel provided ineffective assistance:

(a) by failing "to file a Bill of Particulars and prepare for trial";

(b) by failing to require "the prosecution to disclose evidence favorable to petitioner and put the defense under the reciprocal discovery that would require disclosure of alibi information";

(c) by "adopt[ing] a defense not most compatible with the facts."

Pet. Attach. 8-10, ECF No. 1. The respondent has filed a motion to dismiss, and Jessup has responded, making the matter ripe for disposition.

II. DISCUSSION.

A. Procedural Default.

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest

state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). The exhaustion requirement in § 2254(b) "requires a federal habeas petitioner to provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982).[6] If the petitioner has not presented a claim to the state courts, but would clearly be barred by an independent and adequate state procedural rule from having that claim adjudicated now if he returned to state court, the claim is procedurally barred from federal habeas review. Bassette v. Thompson, 915 F.2d 932, 936 (4th Cir. 1990) (citing Teague v. Lane, 489 U.S. 288 (1989)). A federal habeas court may review the merits of a procedurally defaulted claim only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[7] Coleman v. Thompson, 501 U.S. 722, 750 (1991), holding modified on other grounds by Martinez v. Ryan, 566 U.S. 1 (2012).

Jessup did not present his federal habeas Claim (b) in the form habeas petition filed in the Supreme Court of Virginia. This issue was included only in the untimely filed papers not considered by the state court. Jessup would now be precluded from presenting these claims with his additional factual support in state court. Va. Code Ann. §§ 8.01-654(A)(2), -654(B)(2). These

---

[6] The court has omitted internal quotation marks, alterations, and citations here and throughout this memorandum opinion, unless otherwise noted.

[7] The miscarriage of justice exception to default requires a colorable showing that, based on new evidence not presented at trial, "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298, 327 (1995) (holding that actual innocence contention to open a "gateway" through procedural default requires showing that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence"). Jessup has made no such showing.

7

Virginia Code sections, setting the statute of limitations for bringing a state habeas claim, and requiring a habeas petitioner to bring in his first petition all allegations then known to him, are both adequate and independent state procedural rules. Bassette, 915 F.2d at 937 (regarding § 8.01-654(B)(2)); Sparrow v. Dir., Dep't of Corrs., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006) (regarding § 8.01-654(A)(2)). Accordingly, the court concludes that Claim (b) is procedurally barred from federal review absent a showing of cause and prejudice. Coleman, 501 U.S. at 750.

To establish "cause," the petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule. A factor is external . . . if it cannot fairly be attributed to the prisoner." Davila v. Davis, 137 S. Ct. 2058, 2065 (2017). Jessup does not present any factor outside his control that hampered his ability to submit all of his state habeas filings within the one-year statutory limit, Va. Code Ann. § 8.01-654(A)(2), or to file his opposition to the motion to dismiss by the court-ordered deadline. He merely argues that this court should ignore the state court's findings under its own rules that his late-filed pleadings would not be considered on the merits. As he fails to show cause for his default, this court is barred from addressing Claim (b) on the merits and will grant the motion to dismiss as to this claim.

B. Review of Adjudicated Claims.

Under 28 U.S.C. § 2254(d), the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not

only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). Furthermore, the federal habeas court's "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011)

To prevail on a claim that counsel's representation was so defective as to require reversal of a conviction, a petitioner must meet a two-prong standard, showing that counsel's unreasonably deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances and facts known to counsel at the time of the representation. Id. at 687-88. The petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689. Second, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the petitioner fails to satisfy either prong, his claim fails without need for further inquiry. Id. at 697.

Jessup raised his federal Claims (a) and (c) in the form state habeas petition, and the Supreme Court of Virginia adjudicated them on the merits. Accordingly, this court may review the merits of these claims only under the deferential standard mandated by § 2254(d). As noted, however, the state court considered only Jessup's form petition and not his later-filed supporting

arguments and facts. Therefore, this court's review is also limited to the claims as presented in the form petition. Cullen, 563 U.S. at 181.

The Supreme Court of Virginia found that Jessup failed to meet either prong of the Strickland standard as to current Claim (a), alleging that "counsel failed to seek a Bill of Particulars." Mem. Supp. Mot. Dism. Ex. A, at 3, ECF No. 11-1. The Court stated that Jessup "fails to identify or proffer what information counsel should have requested in a bill of particulars or how that information would have affected his defense. Thus, [Jessup] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." Id.

Conclusory allegations of ineffective assistance of counsel, without factual support, are insufficient to raise a constitutional issue. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), overruled on other grounds Gray v. Netherland, 518 U.S. 152 (1996). Without a particularized description of the information counsel failed to obtain, the habeas court cannot assess either counsel's alleged deficiency in failing to obtain it or the likelihood that prejudice resulted from that omission. Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (holding that failure to proffer what favorable evidence or testimony counsel should have produced is fatal to allegation of inadequate investigation). The court concludes, pursuant to § 2254(d), that the state court's adjudication of Jessup's Claim (a) was not contrary to, or an unreasonable application of, federal

law and was not based on an unreasonable determination of the facts in light of the evidence properly presented.[8] The court will grant the motion to dismiss as to Claim (a).

The Supreme Court of Virginia also denied relief under Strickland as to Jessup's current Claim (c), alleging that "counsel failed to make reasonable efforts to procure the testimony of unnamed alibi witnesses." Mem. Supp. Mot. Dism. Ex. A, at 1, ECF No. 11-1. The Court stated:

> [Jessup] fails to identify how the defense theory that counsel presented at trial was not compatible with the facts of the case. [Jessup] also fails to proffer or articulate what theory of defense counsel should have presented and argue that a different theory of defense would have been successful. Thus, [he] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Id. at 1-2. Overcoming the presumption of reasonableness that counsel enjoys regarding his chosen trial strategy and the decisions in support of that strategy is difficult. Strickland, 466 U.S. at 689. Jessup's bare declaration that it was not compatible with the facts in his case simply cannot suffice. The court concludes, pursuant to § 2254(d), that the state court's adjudication of Jessup's Claim (c) was not contrary to, or an unreasonable application of, federal law and was not based on

---

[8] In any event, Jessup's factually supported version of this claim also fails under Strickland. He contends that a bill of particulars would have required the Commonwealth to provide with more specificity the dates when the alleged offenses occurred to allow him to develop alibi evidence. Counsel reasonably could have believed that Jessup was not likely entitled to a bill of particulars here. Under Virginia law, "[a] bill of particulars is required only when the indictment is insufficient to notify the accused of the nature and character of the charges so he can make his defense." Yeager v. Commonwealth, 433 S.E.2d 248, 250 (Va. App. 1993). When an adult is charged with sexual offenses against a child, "time [is] not of the essence for the offenses charged." Clinebell v. Commonwealth, 349 S.E.2d 676, 679 (Va. App. 1986) (holding that in statutory rape case, when age of victim is not in dispute, indictment is not required to specify exact date of offense). The indictments against Jessup alleged a limited range of dates for each offense. Jessup's counsel also had opportunity to cross-examine C.H. extensively during the preliminary hearing in the juvenile court to narrow the dates of the offenses in preparation for trial. Pr. Hr'g Tr. 20-21, 23, 28, 30-31, 39. During the trial itself, counsel again questioned C.H. extensively about when the offenses had occurred. He asked C.H. if she had been as precise as she could be on the dates, and she responded that she had. Tr. at 64, 68-69, 101. On this record, the court cannot find that Jessup's counsel provided unreasonable representation in failing to request a bill of particulars or that but for his failure to do so, the outcome would have been different at trial.

11

an unreasonable determination of the facts in light of the evidence properly presented.[9] The court will grant the motion to dismiss as to Claim (c).

III. CONCLUSION

After careful review of the petition, the motion to dismiss, and pertinent parts of the state court records, the court concludes that the motion to dismiss must be granted. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

ENTER: This 27th day of September, 2019.

_____
Senior United States District Judge

---

[9] Even if the court could consider the merits of Jessup's factually supported version of this claim, it also fails under Strickland. Counsel's primary strategy was to discredit the accuracy of C.H.'s testimony. Jessup contends that counsel should have instead focused on the alibi that Jessup was racing motorcycles at a race track on the dates when C.H. claimed he had molested her. Jessup asserts that counsel should have obtained documentation and witness testimony about his race track visits. However, the record reflects that Jessup failed to tell counsel about this potential defense until approximately one week before the trial date. Tr. at 14. Counsel then made unsuccessful attempts to subpoena documentation from the race track owner and moved for a continuance of the trial to allow further development of such evidence. Id. at 14-19. Judge White denied a continuance. Id. at 28. Nevertheless, counsel presented testimony from Jessup's wife that Jessup made frequent trips to the race track, including the weekend of October 27, 2012. Id. at 146-50. Jessup's wife testified that she and Jessup left the race track in the early evening on October 27, 2012, went home together, and stayed there. Id. at 148-49. Counsel argued that Jessup could not have committed the offense on October 27, 2012, that C.H. described because he was at the race track. Id. at 161.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Counsel's investigative decisions critically depend on timely and accurate information provided by his client, as does the court's assessment of the reasonableness of counsel's decisions. Id. at 691. In this case, Jessup failed to direct his counsel in a timely manner to the race track as a source of possible, additional alibi evidence. Moreover, consistent with counsel's strategy, counsel impeached C.H. with her prior sworn testimony from the preliminary hearing and attempted to discredit her using discrepancies between her statements, as well as the testimony about trips to the race track. Clearly, the fact finder did not credit the testimony that Jessup was at home with his wife after motorcycle racing on October 27, 2012. Counsel's strategic decisions cannot be deemed unreasonable, however, merely because they prove unsuccessful at achieving acquittal. Id. at 689. The court cannot find that Jessup's counsel failed to provide reasonable representation under the circumstances he faced.

12